Thank you, Met Police and Court. My name is Jay Jordan. I represent Mr. Carjabal as it relates to the case here today, which has been brought, appealed on two specific grounds. First, His name is Carbajal? Carbajal. I hope I'm pronouncing that right. That's why I've been saying it for the last year or so. You may need to pull that microphone a little bit closer, just so I can hear you. Yes, sir. Better? Thank you. Yes, sir. Thank you very much. The first issue was the district court's enhancement, finding that Mr. Carbajal maintained a drug premises under the statute. And then secondly, the district court, we argue incorrectly, denied reduction by way of reviewing for a minor or mitigating role enhancement or reduction, excuse me. The first issue, maintain the premise enhancement, I believe the law states that there are two issues that the court, and the court did look at this, possessory interest, which in this case, Mr. Carbajal was not on the lease, was not the owner of the property, nothing like that. And then the second issue, which is the controlled access to or activities to the premises. This specifically has been briefed by both sides. There are several cases, Garcia, Bell and Jones, I believe, as well as the Miller case the government cited that relate to the premise issue. I would argue that this case, the Carbajal case, is different than those cases. In those cases, you find situations where, for instance, perhaps it was a situation where the individual Under the review in each instance, both the arguments is clearly erroneous. Correct, Your Honor. Yes. In these other cases, you would find situations like the defendant owned the property or was on the lease to the property, maintained the property, such as in one instance, cutting the grass or paying the utilities. Other instances, there was, I believe it was the Bell case, where there was actual manufacturing of drugs going on in the kitchen of the defendant's home. Also in the Jones case, there is a situation, and this goes to the control aspect of the case, where the defendant actually controlled access by giving keys to other individuals so that they could have access to the case. In this case, I don't believe there was testimony in the record that showed the access I think the government relies on is the fact that Mr. Carbajal was on site five to ten times, as seen by surveillance and it was testified to by law enforcement, five to ten times over a slightly more than 30-day period. There was no evidence that he resided at the residence. In fact, the case is pretty clear that this is referred to many, many times, this was a stash house. The second thing, as far as government's reliance as to the control and access, Mr. Carbajal is seen on surveillance a couple of times opening the door from the inside and letting someone in the house, responding to the front door, so to speak. I don't believe this is similar to these other cases. For instance, where in the Jones case, where the defendant in question actually gave a key to his sister and allowed her to access the residence freely and voluntarily. Switching gears, if I could, to the second issue, which is the mitigating role, an issue that I have I think has slightly changed over the last couple of years, especially in light of the 794 Amendment to 3B1.2. In this particular case, I don't believe there is evidence of that Mr. Carbajal specifically participated in the sale, bartering, arranging transactions, contacting suppliers, the production side of the process. I don't believe there is significant testimony that he had much by way of decision-making authority. I don't believe there was any evidence in the record that he coordinated, recruited, or organized the activities. I believe the record indicates Mr. Carbajal was much more along the lines of a courier type situation. I think specifically the PSR report, as taken into consideration and reviewed by the District Court, indicates through three specific paragraphs in which that report documents Mr. Carbajal's role. It doesn't discuss any of these issues. But is there any evidence that there were other people more involved in this crime? I believe the answer is yes, Your Honor. And I believe specifically Mr. Duvall. Mr. Duvall, and I hope I am pronouncing his name correctly as well, I think the U.S. Attorney gave me that information earlier. I believe there was testimony within the record that showed that he, who was the main co-defendant in the case, was doing other things that would have been more along the lines as I described earlier. Okay. What was he doing? Specifically, I think he was going to Texas and Mexico with large amounts of cash. And I think the purposes, I am trying to locate that and I don't have it in front of me, but I believe the purposes of those trips were related to supply. So I would argue that just in that instance, Mr. Duvall's actions with this large amount of cash, unlike Mr. Carbajal, who was never found with significant amounts of cash that I understand, nor did, we of course know he is from Illinois and was found in North Carolina, but there is no indication in the record that I saw that indicated where he is going to, for instance, like Texas and Mexico with these large amounts of cash, which I believe would distinguish Mr. Carbajal's and Mr. Duvall's activities in the case. Furthermore, and I don't have the benefit of Mr. Duvall's, Mr. Duvall's was sentenced at a later date, but I believe if I am correct, the PSR indicates that the drug weight that was attributable to or attributed to Mr. Carbajal was the amount that was found on site on the day Mr. Carbajal was taken into custody. I think that is important because if Mr. Carbajal truly was, if there was evidence of Mr. Carbajal's activity in these other things, I think it would be reasonably foreseeable that they could relate other drug amounts to Mr. Carbajal specifically, not just the amount that was on scene at the date of, on premises of the date of his arrest, which I believe again. So then under that theory, whatever the probation office or the officers possibly could load up on a defendant, you think that is the rule they should? No, sir. I wouldn't say it like that. I would say my experience is that probation looks at the sum total of the circumstances and attributes a weight. My experience has been, at least in the District of South Carolina, that probation gives, they do look at what can be done, but they give the more conservative estimate on the amount of drugs. Has that not been your experience? I hate to say it. My experience has been probation looks at the sum total of the activity of the individual. They don't load up though, do they? Sir? They don't load everything that could possibly be added to a person. I wouldn't think they would intentionally try to sink an individual by going out of their way to put drug weight on an individual. I didn't say all that. You're putting a lot of other words in there. I say, is your experience that they try to load up on somebody everything they can? No, sir. I would say my experience has been that they try to attribute what's reasonably related to the individual. I believe they do a good job of that. And I think that's an example of that they didn't find other drug weights. Is he a victim of a conspiracy? Yes, sir. I believe so. Why wouldn't he be responsible for everything in the conspiracy? Well, he would be responsible. It's under the law. Sir? Under the law, wouldn't he be responsible for everything in the conspiracy? Reasonably attributable to him, which in this case I think was 8.9 kilograms of cocaine. That's to him and not to the conspiracy. I believe that's just to him. No, I'm talking about, but under the conspiracy, can't he be charged with everything in the conspiracy? I believe he can be charged with everything reasonably foreseeable to his involvement. Yes, sir. So, also, and the court asked this to me. If he was controlling this stash house, because certainly he did exercise some dominion and authority, then how can he be a minor participant? Your Honor, in merging those two questions... You have to compare him against someone else to make him minor. And the only person you're comparing him to is Mr. Duval, right? Correct. That's correct, Your Honor. And so you're asking us to find, I guess as a matter of law, that procuring drugs from a remote source is more evidence, is stronger evidence of criminal conduct than controlling a stash house, aren't you? Well, in some sense, yes. I'm taking the amendment, the 794 Amendment, and basically taking it on its face that a non-exhaustive list of factors are to be considered by the district court. And my point is, first off, I don't think that the district court really even has it on the record as far as how it weighed, how one factor, as Your Honor just mentioned, his involvement in the stash house related to... Do you think Duval was the big dog in this conspiracy? I think there's certainly evidence to indicate that. Is that your argument, that Duval really was a bigger player? Absolutely. And you point to nobody in this conspiracy that was a bigger player than Duval, correct? Based on the information I've seen, Duval, in my estimation, would have been the... But your argument is Duval was the leader, the big dog, based on the evidence, he's the person most culpable, responsible in the conspiracy? I would say that he is more culpable. I don't know that he's most culpable in the conspiracy, but I don't know that that's really the consideration. No, but I'm asking the question so I can get to my next question. So and you think Duval is really, really involved? I think that there's testimony to indicate that Duval is crossing state lines. Yes, sir. I do think he was very involved. So then your argument for a minor role adjustment is anybody less than somebody really, really involved? I believe that's what 794 says. I think 794 says... That cannot be. That is not correct. Let's just say, under your theory then, if we could all agree in some conspiracy, whoever the top person was, his lieutenant would be entitled to a minor role adjustment? Not necessarily a minor, but I think that's where you go through 794 and you have to have... What I'm saying, but that's the argument you're making here. You say, look at Duval. That's the only other person you could name. That's why I asked you. You said, I think he is, when you look at it, he is really involved. And I said, well, he's the top person we know in this conspiracy. And then your argument is, comparing, as a comparison that Judge Keenan asked you about, comparing Carbajal to him, he's less than that. But that doesn't... As a matter of law or clear fact finding, that we have to find that, does it? No, sir. Let me clarify. I believe 794 recommends or says that the district court should look at, compare and contrast the individuals involved in the conspiracy. And that wasn't done at all here. No, sir. That's what I was saying by the record is that the district court didn't go through and analyze, as I believe. The defendant has to present evidence, though, to suggest these different people in terms of how they should be weighed in their participation in the conspiracy. And if there's a failure of proof, we don't have any evidence who these other people were in the conspiracy. So why is that the fault of the district court? I wouldn't say necessarily the fault, but I do believe, I think Mr. Duval was mentioned during the course of the sentencing hearing. And I think just the fact that there's others mentioned, that that triggers this analysis that should be performed by the district court, which is comparing and contrasting. The district court can only do that on the analysis presented. That's correct. So what, I mean, on the evidence. So what was the evidence that mandated a conclusion that this man was a minor participant, Mr. Carbajal? I believe it's a couple of things. Number one, I think the defense counsel did a good job of giving a broad picture of Mr. Carbajal's involvement and what he did and did not do. And then I believe there was at least some testimony that Mr. Duval participated, as I stated, in crossing, going to Texas and Mexico with large amounts of cash. So I think just that triggers the necessity for the district court to go through that analysis. And then back to Judge Cho's question, whether, when you compare and contrast these individuals involved in the conspiracy, it's not just a, if you're slightly lesser involved, you get a minor role. I think the 794 analysis is, you start with, is it a mitigating or a minor, and compare those, and then, or is it somewhere in between, and it may be, that's the difference in a four level, a two level, or perhaps a three level reduction, if it's there at all, and that's contingent on the district court's analysis, which I don't believe was done in this case. Having said that, and again, I think, in adding to that, I should say, I think 794 is the process of sort of pushing us away from this consideration of the integral act or role specific to the conspiracy and comparing and contrasting. It's not from the role itself of the individual, in this case, Mr. Carbajal, but how it compares to, how it compares to the other members or involved in the case. And I don't think I've ever done this, but I will quit with 20 seconds to go. Thank you. It's the first time you've ever stopped early. I think it is. That's a good habit to get in. Yes, sir. Thank you. Ms. Harriston? May it please the Court, Your Honors. Your Honors, I'll start with the maintaining a premises enhancement that the district court applied in this case. The facts in this case, Your Honors, from the record, indicate this was a conspiracy in which Mr. Carbajal, and that is the pronunciation of his name, Mr. Carbajal, Mr. Duvall, and others were involved. This was the second phase of an ongoing investigation into a drug trafficking organization initiated and focusing initially on Abel Espinosa Garcia. As a result of Mr. Garcia's investigation, Mr. Carbajal and Mr. Duvall were identified. Mr. Duvall was identified initially based on Title III intercepts and confidential source information that stated a red Volkswagen Jetta and a blue Volkswagen Jetta were being used to transport drugs from the south-southern border into North Carolina, specifically to Durham, specifically to 3300 Shannon Road in the apartment that's identified in the record. As a part of that investigation, the officers put a tracker or a cell site track on Mr. Duvall's phone to follow his activities. In the course of the investigation, confidential source information also revealed that there was a silver Volkswagen Jetta that was involved in this investigation, and that had been seen at 3300 Shannon Road. In early April, the based on the poll camera information and based on the fact that in tracking the telephone for Mr. Duvall, they knew that he was en route to Durham. Officers set up surveillance at Shannon Road. They also set up surveillance at Alexan Drive. Alexan Drive was a separate What evidence do you have of him maintaining the residence, though? Just go straight to that. What do you have? Your Honor? Because it's your burden, isn't it? It is, and the government met its burden in the district court. What is it, though? The facts are that on the poll camera that was installed outside of Shannon Road, this defendant was seen five to ten times within 30 days, entering and exiting, carrying coolers into and out of the apartment. And on the day of his arrest, the officers set up surveillance at Shannon Road, put it into the silver Jetta, go to Alexan Drive, meet Mr. Duvall, who was in the red Jetta. They saw him then take coolers and a suitcase, a cooler and a suitcase, put it into the red Jetta, and returned to 3300 Shannon Drive. You mean an excellent case that he was there and that he used the residence. Is that enough? Well, there are additional evidence. Inside the residence, the officers found additional packaging material consistent with the same packaging material that was found around the packages that were inside the cooler in the silver Jetta that Mr. Carbajal drove back to the residence. Inside the apartment, the officers also recovered at least one document that had the defendant's name on it. The officer testified to this at the sentencing hearing. In addition to that, the district court asked the officer additional questions about his entering and exiting. The officer testified that on the poll camera, this defendant was seen going into the apartment, leaving the apartment on numerous occasions. The officer admitted he did not watch the camera 24 hours a day, but if he checked the camera in the morning or if he checked the camera in the evening, the facts in this case support the district court's finding that... But you're making a good argument, aren't you, that he was there a lot. He was there a lot. Does that mean that he qualifies under maintaining the residence? He was maintaining the residence, Your Honor, because the sole purpose for this residence, unlike other cases where the maintaining adjustment has been applied or defendants have argued against it, this is not a case where the defendant is arguing, oh, but I lived there. That was my primary use for this apartment. The sole purpose that this apartment was being used for, because there were sparse furnishings, there was a suitcase with men's clothing there, but this apartment was being used for the purpose of storing drugs. Mr. Carbajal lived in Elgin. Do you think maintained means used? You think that if the two-level enhancement was, which it is, maintained a premises for the purpose of manufacturing or distributing of a controlled substance, do you think that's the same as if the enhancement said if he used a residence? You seem to be making a good argument that he used it. Your argument is that maintained is the same as used? My argument is that he maintained it. Based on what? The fact that he's seen there between five and ten times during a short period of time. He did not live in North Carolina, Your Honor. He had no other connections to North Carolina. He's the person who maintained it. Why couldn't somebody else have maintained it and he just used it, I'm asking, on your evidence? More than one person can maintain a residence. It is our position that this defendant maintained this residence. But if person A had a lease on the property, and then what if the evidence here showed that Duvall actually leased that property? The evidence was it's not, but if it were that Duvall leased it, paid the rent on it, and that Carbajal did everything that he did he was there a lot, would Carbajal still be maintaining that residence or would that go to Duvall? I think even under those facts, Your Honor, both defendants could be assessed the enhancement for maintaining. Even if Mr. Duvall had leased the property and Carbajal were in charge of making sure the drugs got there, the drugs were distributed, that money was returned back to that property. So is anybody who carried drugs in there, they're maintaining it for that purpose? No, it's not that broad. It seemed to be suggesting, Ms. Harrison, that it's enough to maintain just by having regular access. What do you have in this case other than a document found inside of unknown description apparently, and the fact that there was regular entry by the defendant, that the defendant was maintaining the premises? Is there anything else in this record? Your Honor, the fact that it's not a residence that was used for anybody to live in, he lived by his own admission in Elgin, Illinois. He was coming to Durham to this location to meet Mr. Duvall for the purpose of transporting the drugs to that location. Empty packaging material indicates that drugs had been taken there on a prior occasion that were no longer there. So these two defendants are the two who were seen most often on the poll camera accessing, going into and out of that residence. What if a third party had been the person that had procured the residence and given the keys to those other two defendants and said, this is where you bring the stuff, this is the place to come and go from, how would they be maintaining it if they were only receiving information and orders from someone else? You're just saying you have circumstantial evidence that they were maintaining and that the circumstantial evidence is sufficient to get you over the bar. We are, Your Honor, because for purposes of sentencing, by preponderance of the evidence on these facts, the district court did not clearly err. When you have two men, neither of whom have any connection to the city of Durham, who are coming to the city of Durham on multiple occasions to a specific location for no other reason based on these facts, there's nothing else in there indicating they had any legitimate purpose for being there. They have to have a legitimate purpose. The question is, does it maintain, suggest that they are controlling the residence? And on these facts, yes, Your Honor. The answer to your question is yes. So how does the evidence suggest controlling as opposed to mere access? I'm sorry, Your Honor. How does the evidence here in this case suggest that they were actually controlling the premises as opposed to having been given access? On this record, there are no facts that anyone was giving them access. Mr. Carbajal, on the facts in this record, according to the officer's testimony, is the one who had access to freely entering, leaving. Other people would appear there. He was the one allowing access to the residence for other people who appeared there based on the officer's testimony. Right. But what I'm asking you, the flip side of what I asked Mr. Jordan on the amendment question, in this case, it's your burden, evidentiary burden. It is. So just so you're saying just because they had regular access, that's sufficient to show they were maintaining? On these facts, it is, Your Honor. Had they just, had the facts included some evidence that they actually lived there, that this premises was being used for some purpose, some living purpose, but that's not. Were any suitcases found inside the residence? I think the evidence indicated that there was one suitcase found inside, Your Honor, that had male clothing in it. But nothing tying to this defendant? The officer indicated he could not say that the clothes belonged to Mr. Carbajal. That's correct. Yes, ma'am. Your factual argument sounds a lot like somebody could just say that Mr. Carbajal was using the residence, not maintaining the residence. But your argument, as I think you said a second ago, is just that on this evidence, the fact finder, the judge, could find it was being maintained, and that's not clearly erroneous. That's correct, Your Honor. On these facts. Could somebody, could the judge have found to the contrary, though? He could have. You're saying you've got the finding in this case, and you think there's a basis for it, and you also think since there is a basis for it, and the court found it, that it stands unless we say you clearly could not have made that finding, District Court Judge. That's correct, Your Honor. And on this record, it's the government's position that those findings was not clearly erroneous. What about the other provision? Yes, Your Honor. Regarding the role adjustment, in this case, the District Court denied the minor role adjustment, and the defendant's argument appears to be that he was a courier or almost merely present, but not quite merely present, that he was less culpable. In order to qualify, first of all, the defendant had the burden to produce some evidence by preponderance of the evidence, to produce evidence by preponderance, that he was entitled to the minor role adjustment, and he presented no evidence. He argued from the facts in the record, the government's witness, and the facts in the pre-sentence report. Secondly. Well, aren't the facts of what the other persons did in the record? Yes, sir. Well, then, that's part of the calculus to be used for what he has a burden to prove, but in terms of putting forth, it's not a case where he's the only person charged. You said, I'm the minor person, and you look where the record, you're the only person. But the record demonstrates that there are other people in what they did. Do you agree with that? Yes, Your Honor. So, that's the basis for the court have to look at the comparative aspect of it. You mean, there is evidence. You may disagree that it's enough, but he did put forth evidence. But here, the district court didn't compare because they were using the old standard, not the 794. Well, the district court, this defendant was sentenced under the 2015 guidelines, which encompassed the 794 amendment, Your Honor. And compared? He didn't compare, but Your Honor, I could not find a case where this court has required the district court to tick through each of the factors under 3B1.2. And more importantly, Your Honor, the district court's analysis or its recitation of its findings of fact in this case indicate that this defendant, under 3B1.2, the findings indicate this defendant was not substantially less culpable than the average participant in this case. Well, there's no evidence in this case as to what an average participant is, is there? I mean, did the defendant put on any evidence as to what an average participant is in this conspiracy? Well, no, ma'am. But the defendant has tried to compare himself to Mr. Duvall and say that he's less culpable than Mr. Duvall. And on these facts... I guess this is a friendly question on my part. I understand. Yes, ma'am. I'm just wondering if the defendant fails to produce any evidence as to who an average participant is. Then the district court could not have clearly erred in denying the role adjustment on these facts because there is no evidence. This defendant simply argued that he was entitled to a role adjustment because Mr. Duvall is the one who was bringing the drugs to North Carolina. Under the defendant's analysis of who's the courier, Mr. Duvall is the person who's the courier. There's a coordination, there's an organization, there's communication that took place in order for Mr. Carbajal to know to meet Mr. Duvall at Alexan Drive. Mr. Carbajal, on this record, is the person who's the courier. He's the person who's bringing the drugs. Mr. Duvall is. Mr. Carbajal then goes to meet him and he is the person who brings him back to Shannon Road, to the apartment at Shannon Road. The defendant's position is that somehow that makes him substantially less culpable than Mr. Duvall. And on these facts, it does not. The district... Let me ask you this. First of all, there is evidence in the record, there's evidence in the record on which you can make an argument, correct? If there's evidence on the record, you could say, Your Honor, I didn't offer any evidence, but based on the evidence already there, I make this argument. You can do that, can't you? Is Your Honor asking regarding the defendant's argument? Yeah, but anybody... Yes, sir. Well, that's exactly what he did, Your Honor, yes. And he can do that. He did and he can't. So there is evidence in the record on which he can at least base an argument. Yes, sir. And so you said earlier he didn't offer any evidence. I think what you mean is he didn't offer any additional evidence. He didn't offer any additional evidence beyond what was in the record. You can argue on the evidence in the record. It's not unusual for a defendant to go, Your Honor, I think I'm entitled to some adjustment down. I don't mean a technical term. I'm entitled to some lowering of my guidelines because look at that. I'm not as filling whatever the guideline provision might be. And if you have to... If he did a comparison, it would be who would he have to compare him to? Duvall? Duvall. Is there anybody else to compare him to? You could actually compare him to other people in the conspiracy. Maria Arriola was also a person who organized couriers to bring drugs. The government's position is that Mr. Carbajal was on the supply side of the organizations because the facts in the pre-sentence report indicate that Abel Espinoza-Garcia was being supplied drugs by... I got you. So there are people that he could be compared to. Are there people in the record that the government argues are less culpable than he? On this record, less culpable than Mr. Carbajal? Carbajal. He's the one that wants to break. Not in this record. They're all substantially culpable. No one is substantially less culpable than anyone else in this record. So your argument is, based on the record in front of the judge, the only information the judge had, the judge could just look and see that Carbajal, as you argued to him, was argued contrary in your office. The other side would argue he's not as culpable. You just say the judge is not entitled to any minor role adjustment because the record in front of the judge wouldn't support one. Is that your argument? That is our argument, Your Honor. The record did not support and the court did not clearly err in denying the role adjustment in this case. What do we do with the fact that the court didn't do a comparison? It didn't do an explicit comparison for purposes of minor role adjustment. In the process of deciding, the judge didn't say, well, I find that compared to so-and-so, you did just as much. Did the judge do that? He did not do that, Your Honor, but the findings that the court made illustrated that he was looking at the defendant's participation in the charged activity and determining his role in the offense. The findings, Your Honors, we would argue, show that the district court was finding that this defendant was not substantially less culpable than the average participant. Based on what the court had in front of it, the court found that a minor role adjustment, finding that this defendant was substantially less culpable, was not appropriate in this case on these facts. And the court's findings of fact are not clearly erroneous and we'd ask this court to find some. But he wasn't doing it in a context of a comparison as opposed to the elements of the offense he was well involved in them and they were sufficiently involved. He wasn't comparing him at all. Well, he was looking at what he did, but you can't just look at what he did. It's because that's the whole purpose of a comparison. He may have been really did something bad, but compared to someone else, it's puny. So you can't look at just what he did. Well, I think, Your Honor, if you look at the record in totality, the defendant's argument was he compared himself to the co-defendant Duvall. So in the judge's findings, the judge's findings, finding the specific findings of what the defendant did, we would argue he was making a finding as to this defendant compared to Mr. Duvall. He didn't do that explicitly. He didn't say it explicitly, Your Honor, but taking in totality the entire argument, the entire record in this case. We don't do that in sentencing. Lynn tells us we can't do that just because it may be in the record somewhere. You have to explicitly deal with it. And if you have to do it with the 35, 53 factors and other mitigating factors, you have to look at those. It is his burden, but you just can't make any comparison at all. You just say, yeah, this is what you did. I'm satisfied that you were a bad person and you did these things. But he's almost like saying, okay, yeah, you're right, I did. But now do the comparison. You'll find that in comparison, it's a relative thing. Do you agree? It is a relative thing in some cases. But in this case, Your Honor, in this case, the judge is looking at the facts in this case. And when this court reviews the court's factual findings, under the clearly erroneous standard, the district court did not clearly err on these facts in finding that a role adjustment was not appropriate. This court may disagree with the factual findings, but this court has also said that that's not sufficient, that this court may have come out a different way in saying that the district court clearly erred not in this record. I don't think they have to disagree. Perhaps we can remand so that the district court does it correctly and specifically makes the comparison. In the first instance, which was not done, that's the remedy. It wouldn't vacate in reverse, but you remand and say, as we do in other cases in procedural unreasonableness, you need to do it explicitly. But he was operating under the old kind of standards, under Powell-type view. We know that's not quite the way now, correct? There's no, no, right? Your Honor, remanding to the district court for the district court to compare Mr. Carbajal to Mr. Duvall. To whomever that the record would suggest that it showed the activities of other people. And not just the average person in national, but what he did based on people in this conspiracy and everybody in the conspiracy. Well, compared to everyone in this conspiracy in this record, this defendant was not substantially less culpable. Well, that, I mean, that's your conclusion because you represent the government. But it's the court that should decide it based on what we say are the metrics to be considered. And explicitly, we can find it. Otherwise, how can we review it? All we have to do is what, I guess, often times the court does is sort of go with what the government says. But I thought the balance of the law, we would look at... Yes, sir. And we respect that, Your Honor. We're not asking the court to simply go with what the government says. On this record, on these facts, the district court did not go with these facts, Your Honor. Even if he makes a comparison, it's going to be the government's position, obviously, that the same result is going to occur, that this defendant is not entitled to a role adjustment on these facts because he is not substantially less culpable than the other participants in this criminal activity. I would suggest that the standard is that this court just goes with what the government says, which I don't think is the standard. We would just rubber stamp and we wouldn't have you up here trying to explain why the district court should be affirmed. I've never appeared before this court, Your Honor, and thought that this court was going to rubber stamp anything that the government put forth in its argument. We don't rubber stamp anything. We write an opinion. Yes, sir. We don't stamp them. That's what you're saying. You don't think we just go with the government rubber stamp? That is exactly what I just said. I have never seen this court rubber stamp any side, one side or the other. You were sort of hoping for a rubber stamp every now and then, but you never see it. No, sir. I don't even hope for that. No, sir. You don't want it to happen. You wouldn't like it. We don't want to go into the percentage of cases where the government wins. Yeah, I know that, but you have to look at who has the burden and what the standard of review is, don't you, in deciding the case. I'm just not prepared to say that anybody that I know of sits and just rubber stamps or accepts what the government says. I don't think anybody said today that that happens. I'm asking you, did you expect us to go with that? You're asking me that question? Yeah, to go with your conclusion, because that's what you said. I'm saying that the comparison has to be made. You're saying it really wasn't making a difference anyway, because it's going to be the same result anyway. Aren't you saying that the district court's going to do the same thing? Well, the- Isn't that the logical conclusion of what you said? It's the logical conclusion, because on this record, those are the facts. That the court's going to do exactly what you said. Is that right? On these facts, I said, Your Honor. On these facts, you think that the court's going to do the very same thing that you just argued to us, so why send it back? Isn't that the logical conclusion? That's the conclusion the court has drawn. Obviously, that's what I'm- I don't want to explore that, though, but you don't think- you think that has something- you think because that's what the court has already done, that's what you've argued to us, you think that's what the record supports, and you think if we were to say you have to be more explicit, you think the court decided it correctly? I think the court- for the court to be explicit, you're just saying you expect the court will make it more explicit, but would come to the same conclusion. That's- that is the government's position, not intending any offense to this court ever, Chief Judge Gregory. And see, and that's the difference where I see it, that I think the court is going to go back, if it went back, and look at it and do the comparisons, and I don't know what that will be once the court does that. And if the court does that, Your Honor, if this court directs the court to do that, the different- and a different conclusion is reached, then that is the district court's conclusion. And I'm saying that, and so I'm making it very clear, I'm saying and addressing the point that we don't base it on whether you think it's going to be the same result. I understand, Your Honor. That's my point, is that I don't want to say that anybody rubber-staffed anything, but listen very carefully. What I said was that you were suggesting that I don't know why you need to send it back because they're going to do the same thing, and I'm saying that's not the metric that I use or this court use or any other judge on the Court of Appeals uses. But what I'm saying is that we can't buy into that because that wouldn't be justice. That's my point. I understand, Your Honor. I never said anybody rubber-staffed anything. Go ahead. I understand, Your Honor, and I did not intend to offend the court by making that statement. No, you didn't make that statement. I was simply saying, Your Honor, that the government's position in the lower court would be the same on these facts that this defendant did not qualify. Oh, I understand exactly what you said. The government would have the same position, but I'm just saying that's not the metric for me to say, well, it's going to be the same result. I understand. I understand, Your Honor. This court has always rendered a fair decision, and the government will stand by and obviously abide by whatever decision this court renders. Thank you. I know you will. Thank you so much. Mr. Jordan, you have some time left. Mr. Jordan, if you could start out. You don't make the argument in your brief that the district court was procedurally unreasonable and didn't fail to conduct a comparison. Your analysis seems limited to saying that the evidence showed that the defendant's participation was minimal. Isn't that correct? Your Honor, I think what I was trying to convey in my brief was that the court, what I believe the court should have done was analyze specifically these two individuals, Mr. Duvall and Mr. Carbajal, in relationship to how their involvement in the conspiracy related to each other. And that if you do that, my point of contention was that my client's activities were less than. Right. You weren't saying the court failed to make the comparison. You're saying the court erred in failing to give the minimal participant consideration. His participation was limited to transporting or storing drugs. He had no authority for decision making, planning, or recruiting. You never say the court failed to conduct the proper analysis, just that it erred in regarding whether your client was a minor participant. Isn't that correct? That's correct. And that goes to, I guess, a better way to say that would have been, as Your Honor just did, that based on the court's lack of analysis or analysis or lack thereof, that differentials could have been drawn specifically from the individuals involved in the conspiracy. When you call that a better way, that's a different argument, isn't it? Judge, I can understand. I would argue that it's an offshoot of that argument, I guess you'd say. You just conceded your case. I hope I did not. You hope. Do you understand what Judge Keenan asked you and what your response was? I think I understood her question to be… Well, I'll just restate in case you were confused. My question was that I don't see in your brief any argument that the court was procedurally unreasonable in its analysis. I read your brief, pages 12 and 13, to say that the court erred in concluding that your client failed to prove that he was a minor participant. And you're saying the record shows he was a minor participant. That's what I take out of page 12 and 13 of your brief. Not an argument that the court failed to make a comparison, but the court erred in what it did. I apologize. Is that coming from the brief or the supplement? Okay. Opening brief. Yeah, I'm sorry. Let me see. I think based on the court's request that we brief 794, I think I did go into a little more detail. I hope I did, as to getting into the analysis in light of how 794 affects this case, and I believe it does. Yeah, but I'm not sure that you did there either. I'm just looking at what I highlighted here, but you're saying his role was never increased, he maintained a low-level function in the criminal activity, he was a mule or a courier and nothing more. So again, I don't see the argument that the court failed to make the comparative analysis, but it simply erred in not giving you the reduction in sentence. Your Honor, I would argue on page 3 of my supplemental brief that when I address amendment 794 and try to dissect how my client played a lower-level role, I would argue that that would provide the analysis necessary to say that the court did not go through that process, I guess. That's my argument, Judge. And I think that process is one that has been, that we sort of circled around, but it would go back to how, in this case, Mr. Carbajal's activities are different from that of the other individuals involved in the experience, specifically Mr. Duvall, and how that aspect was not reviewed by the court other than what was in the record, which would indicate that Mr. Duvall was, as I said earlier, going to Texas and Mexico with large amounts of cash. Nothing in the record indicates that Mr. Carbajal was doing such things as that. I don't know if he was or was not, but nothing in the record indicated that he was doing those such things. As well as, and I think it was in one place I read in the record where Mr. Duvall did have control, or not control, but involvement with another individual, Mr. Abel, and my time is up. Thank you very much for your time. Wait a second. I would like to ask a question. Sure. I want to ask a question. Are you telling us you did make the argument that there was a procedural problem? I mean, do you think you made that argument? Judge. That the court refused or made or erred in not comparing my client with other people in this drug operation. Do you think you said that? Judge. In your supplemental brief? I'm relying on page three of my supplement under the analysis. I read it. Where. I'm just asking you, do you think you made that argument? I think so. I think by saying that Amendment 794 comes along. Tell me to the sentence that you think most clearly suggests you made that argument. I don't know that there's a sentence that says specifically this took place. Are there any words that say that? There had to be a comparison which the court didn't do? Not comparing your client to the factors, but comparing your client to another person involved. Okay. Well, I can tell you what I'm going to do is we'll read page three closely. I would argue that in that first paragraph where I talk about comparing other individuals involved, I believe a manner that would involve, excuse me, and I apologize, but I believe to sort of summarize that. Your response to the supplemental request was not very helpful to the court. I mean, we told you we wanted to know what does that have to do and relate to your case. It was basically like somebody's giving you a pitch and you're supposed to try to hit it. I mean, that's why both Judge Keenan and Judge Sherrod are aptly asking you, is it in there? Because the question is, it seems like first you're saying what he did does not equal to anything, equals to minor. And when you conclude otherwise, I object to that. But it was clearly asking you, what about the comparison? Whether it's equal to whatever it is. It can equal to what that sum is, X. But your point is, in comparison, is mine can be X, but there's someone else, whatever that is, it equals X plus one. Correct. You didn't go to the exponential X plus anything and say the error occurred because you did not, from an equation standpoint, if you want to be formulaic about it, and that's what they were asking, did you ever raise the question from a comparison question, that was the error, as opposed to you disagree with the conclusion as to what he did equals minor. That's a different question. That's why I asked you, did you realize you were conceding your case from that answer? But anyway, it is what it is. Do you have anything else further to say? No, thank you. Mr. Jordan, do you have anything to say for a wrap-up? No, Your Honor. Okay. Mr. Jordan, before you leave, would you come back to the podium? He asked you to step back. I'm sorry. My apologies. I note that you're court-appointed, and on behalf of the Fourth Circuit, we thank you for your help, because we can't do our jobs without the able assistance of lawyers like yourselves who help us with that, as you will. Thank you very much. Ms. Harrison, as well, we thank you for ably representing the United States. We will come down and greet counsel and proceed to the next case. Thank you.
judges: Roger L. Gregory, Dennis W. Shedd, Barbara Milano Keenan